## J. H. Fahrney v. Patrick H. O'Donnell.

1. CYCLING—*Cycles Are Vehicles.*—Cycles of every kind are vehicles and subject to the law of vehicles, as far as reasonably applicable.

2. STREETS—*Liability in Taking the Wrong Side of the Street.*— In taking the wrong side of the street, one takes the risk of consequences which may arise from his inability to get out of the way of a vehicle or tandem on the right side of the street, and is responsible for injuries sustained by the latter while exercising due care.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. RUSSELL P. GOODWIN, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Reversed and remanded. Opinion filed April 28, 1903.

**Statement.**—On the 26th day of June, 1899, J. H. Fahrney, appellant, and Jennie Haremski (now Cook), were riding a tandem bicycle on Jackson Boulevard, when about twenty-five or more feet west of Wood street they met Bernard Dolan, who was pushing a lawn mower to which a sickle was attached. Their tandem struck the lawn-mower and therby said Dolan was thrown against the sickle and suffered an injury from the effects of which he shortly afterward died. Dolan left him surviving a widow and two daughters, aged twenty-seven and thirty years respectively.

The administrator brought suit in behalf of the next of kin. A trial by jury was had resulting in a verdict against appellant in the sum of $500, on which judgment was entered.

Fahrney v. O'Donnell.

HENRY C. NOYES and DICKINSON & HAREMSKI, attorneys for appellant.

The law requires parties traveling upon a street to keep to the right, and in case of a collision it is *prima facie* evidence of negligence if they do not. 2 Sherman & Redfield on Negligence, 5 Ed., Secs. 649 and 653; Schimpf v. Sliter, 64 Hun, 463; Jones v. Shattuck, 175 Mass. 415; Rowland v. Wanamaker, 193 Penn. State, 598; Angell v. Lewis, 20 R. I. 391; Brooks v. Hart, 14 N. H. 307; Kennard v. Burton, 25 Maine, 39; Smith v. Conway, 121 Mass. 216; Button v. Frink, 51 Conn. 342; Earing v. Lansingh, 7 Wend. 185; Palmer v. Barker, 2 Fairfield (Me.), 338; Daniels v. Clegg, 28 Mich. 32; Turley v. Thomas, 8 Carrington & Payne, 103; Foote v. Am. Prod. Co., 195 Penn. State, 190.

EDWARD J. QUEENY and RICHARD J. FINN, attorneys for appellee.

Persons driving carriages along the road are liable if they do not take care so as to avoid driving against foot passengers, and if a person driving along the road can not pull up because his reins break, that will be no ground for defense, as he is bound to have proper tackle. The rule as to the proper side of the road does not apply to foot passengers, and as regards foot passengers, the carriages may go on whichever side of the road they may please. Cotterill v. Starkey, 8 Carrington & Payne, 691.

MR. JUSTICE BURKE delivered the opinion of the court.

The judgment in this case for the damages sustained by the widow and children of deceased in the death of Bernard Dolan is not claimed by appellant to be excessive. He strenuously insists that he is not liable under the facts and law applicable to this case.

Either the witnesses for the administrator are not worthy of credence or the jury failed to do their duty in assessing so small an amount of damages. The jury found the defendant, Fahrney, guilty of negligence in causing the death of Bernard Dolan. There were two well defined classes of evidence as to the value of deceased's life to his

family.  The one class testified that he had been an inmate of the Washingtonian Home; had no regular employment, cut grass, beat carpets, and thus secured a precarious living, and through the charity of friends was allowed to sleep in the rear of a store a portion of the time; that he had left his family and so conducted himself that his wife made severe threats against him; that at the time of his death his trunk was at a rooming house on West Madison street, and that he had not lived with his family for several years; that he was very deaf and his vision greatly impaired; appeared like a sick man and was fifty-eight years of age.

The other class of witnesses, consisting of the daughters, interested parties, testified that he lived at home, that his trunk was at home, but one of his daughters refused to say how long it had been there, and further testified that he earned $40 or $50 per month and contributed $40 per month toward the support of the family; that he had good sight and hearing, was in good health and able to work.

The amount of the verdict gives evidence that the jury did not credit the statements of the latter class, but did believe from the evidence that the life of the deceased was almost valueless to his family; but the jury were evidently of the impression that for an accident of so serious an outcome, the defendant ought to pay some amount regardless of the monetary value of the deceased's life to his next of kin.

No satisfactory explanation can be found in the evidence for the amount of this verdict.  We are unwilling to say that a sober, industrious husband and father, in good health and fifty-eight years of age is not worth more than $500 to his family, especially when his wife is a paralytic and confined to her bed.  On the other hand, if the evidence tending to show his worthlessness is to be accepted, then $500 is an excessive verdict.  Since this case must be remanded, we shall not make extended comment upon the evidence touching the circumstances of the accident.  The consideration of the evidence was for the jury, but as no reason-

able basis can be found for the amount of the verdict, we will briefly refer to some features of the case which may prove decisive if the case is retried.

Miss Haremski, who sat on the front seat, shouted to the deceased before the collision to attract his attention. If it be true that he was deaf, this fact would account for his failure to stop or to protect himself. All witnesses state that the deceased was going west on Jackson Boulevard and was at least four, and some witnesses say six, feet from the south curb of the street. The tandem was going east and on the south side, its proper side of the street.

It appears that it was the thought of the young lady who was steering the tandem that she could pass between the deceased's lawn-mower and the curb, it being a distance of four or more feet, but the deceased not noticing the approach of the tandem until it was near him, in his excitement suddenly turned his mower either one way or the other, at least in such a way that the front wheel of the tandem struck the mower and thereby threw the deceased against a grass-knife or sickle tied to the handle of the mower with the sharp end pointing directly toward him in such a manner that when he fell he struck the knife, which pierced his hip and cut an artery, causing his death.

The accident occurred on a very hot day and it is suggested that deceased was going west on the south side of the roadway in order to be in the shade.

Counsel have collected the authorities of law upon the respective rights of pedestrians and persons on bicycles, and have argued with much ingenuity the question whether a man pushing a hand-mower on wheels has the rights and protection accorded a pedestrian on the street, or whether it is his duty to keep with his mower to the right of vehicles and tandems.

As we view this case, these questions are immaterial. The case is one of fact, rather than one of law. It is apparent that the street at the point of the accident was free of other vehicles and there was an abundance of room for the tandem to have passed to the north of deceased and

irrespective of the question whether the deceased ought to have passed to the right of the tandem; still if the contention of appellee be correct, that the deceased did not change his course and so in his confusion assist to bring about the accident, the defendant would have been liable. Sec. 653 of 2 Sherman & Redfield on Negligence states; "Cycles of every kind are vehicles and subject to the law of vehicles, as far as reasonably applicable."

We have examined the identical mower which was being pushed along the street by the deceased at the time of the accident, and considering the width and size of the machine and the extremely dangerous manner in which deceased had the knives tied to the handles, it is clear that for his own safety as well as for the safety of any one whom he might have met on the street, that he should have driven his machine along on the right hand or north side of the street, even at the cost of walking in the sun. It was certainly more important for him to have kept the right side of the street with such a machine than if he had been between the fills pulling a buggy. "In taking the wrong side of the street, one takes the risk of consequences which may arise from his inability to get out of the way of a vehicle or tandem on the right side of the street and is responsible for injuries sustained by the latter while exercising due care." Angell v. Lewis, 20 R. I. 391.

In the case at bar, this law can not be invoked to excuse the appellant, if without exercising ordinary care, under the circumstances, he drove his tandem against the lawn-mower and thereby caused the accident.

Under this evidence we can not approve of the verdict as to the question of liability, and we are moved to set aside the conclusion of the jury on this question, not only because we find that the weight of the evidence is in favor of the defendant, but also because of the lack of evidence upon which to base the assessment of damages made by the jury.

The judgment of the Circuit Court will be reversed and the cause remanded.